### 1842. MOSES *v.* THE STATE.

1. An officer arresting under a warrant should exercise reasonable diligence in bringing the person arrested before a judicial officer authorized to examine, commit, or receive bail. While the officer has authority to imprison the person arrested, before commitment trial, he should not do so arbitrarily and without reasonable cause.
2. The words "obstruct, resist, or oppose," as used in the statute making it an offense to obstruct the execution of legal process (Penal Code, § 306), imply forcible resistance.
3. The verdict is without any evidence to support it.

Accusation of resisting arrest, from city court of Blakely—Judge Jordan. March 2, 1909.

Submitted May 4,—Decided May 18, 1909.

*Pottle & Glessner,* for plaintiff in error.

*Walter Park, solicitor,* contra.

HILL, C. J. Moses was convicted of a violation of §306 of the Penal Code, which is in the following language: "If any person shall knowingly and wilfully obstruct, resist, or oppose any officer of this State, or other person duly authorized, in serving, or attempting to serve or execute any lawful process, or order, . . he shall be guilty of a misdemeanor." The evidence, briefly stated, is as follows: The deputy sheriff of the County of Early arrested Moses under a warrant, duly issued by a justice of the peace, charging him with the offense of wife-beating. Moses made no resistance, but took the arresting officer in his buggy and drove with him to the jail. At the time of the arrest a white citizen in the store where he was arrested offered to go upon his bond, but the officer refused to take bond. This citizen thereupon went to the court-house and told the sheriff that he wanted to go on the defendant's bond. The sheriff made no objection to the bondsman offered, but refused to take bond at all. When the defendant and the deputy sheriff reached the jail, the officer ordered him to get out of the buggy and go into the jail, whereupon the defendant began cursing and said that he would not go to jail. The officer took hold of him and he tried to jerk loose, and said he was not going to jail, that he had done nothing for which to go to jail. Two or three times he tried to jerk loose from the officer, and the officer called upon a negro bystander to assist him in putting the defendant in jail. The defendant made no threat of violence, and did not attempt in any way to assault the officer. When the officer first commanded him to go into the jail and he refused, the officer left him and went into the jail, got his pistol, and returned with it, the defendant remaining quietly outside until the officer returned. The evidence further showed that the city court of Blakely was then in session at the court-house, near the jail, and several justices of the peace, including the one who issued the warrant, were easily accessible to the arresting officer. The arrest was in the daytime, and no reason whatever was shown why the defendant should have been imprisoned before a commitment trial, nor why he was not taken before some judicial officer for this purpose.

The record shows the exceptional and remarkable fact—in a criminal case—that the plaintiff in error paid the cost of his appeal and did not resort to a pauper's affidavit.

We do not think that the plaintiff in error, under the facts, was guilty of a violation of the code section above quoted. The words of the statute, "obstruct, resist, or oppose," imply force as a necessary element of the resistance. It will be noted that the defendant, when he was arrested, made no resistance at all, but got into his own buggy and carried the officer with him to the jail. This pacific conduct was probably induced by the impression that his white friend would go on his bond if it became necessary, and that he would have a preliminary investigation. It was quite reasonable that he should have had such an impression. The law made it the duty of the officer arresting to take the defendant with reasonable diligence before the judicial officer who issued the warrant, or some other judicial officer authorized to examine, commit, or receive bail, for the purpose of a preliminary investigation. Of course, an arresting officer would have the right, in a proper case, to imprison a defendant before a preliminary investigation, if necessary to do so for his safe-keeping before or pending the investigation. But in the present case no reason is assigned for the exercise of this right by the officer. Not only was the city court in session, but there were other judicial officers easily accessible, all of whom were fully authorized to examine, commit, or receive bail in the case. The imprisonment of the defendant by the officer, therefore, seems to have been without warrant and arbitrary. The defendant did not resist his arrest. Neither did he forcibly resist the attempt to imprison him without reasonable cause. He simply protested against his unreasonable imprisonment, and emphasized his natural objection to being incarcerated under the circumstances, by refusing to voluntarily go into the jail. Under all the circumstances, we think the defendant's conduct was neither unwarranted nor unlawful, and that his conviction was unauthorized. He seems to be a negro of some property and character. He owned his horse and buggy, paid the costs of his appeal to this court, and has white friends anxious to go on his bond. These things, added to his natural repugnance to be put in jail without a preliminary investigation, furnished, in connection with the apparently arbitrary act of the officer, reasonable grounds for his vehement protest.

*Judgment reversed.*