## 65365. JONES v. THE STATE.

BANKE, Judge.

The appellant and a companion, James Mikell, were jointly indicted for the burglary of a residence belonging to Howell Mc-Donald. The appellant was found guilty following a separate trial at which Mikell testified for the state. This appeal is from the denial of the appellant's motion for new trial.

State's witness Etta Brown, who lived directly across the highway from the McDonald residence, testified that on the day of the burglary, the appellant drove to her house in the company of Mikell and asked her for money to take Mikell to a doctor. Ms. Brown did not know the appellant but was well acquainted with Mikell, who was the father of her granddaughter, Sherry. Sherry was present when the events at issue took place but was unavailable to testify at trial because she was out of the country.

Ms. Brown testified that she told the appellant she had no money, whereupon he drove across the highway to the McDonald

residence, went inside, and returned to his car 30 minutes later. Mr. McDonald testified that his residence was in fact burglarized on the day in question and that some cash was taken along with several other items.

Ms. Brown testified that she had described the appellant to police as being older than Mikell, having gray hair, and wearing glasses. GBI agent Charles Sikes testified, however, that Ms. Brown told him Mikell's companion had black hair; and he stated that she was unable to tell him whether or not he wore glasses. Sikes also testified, over objection, that Ms. Brown's granddaughter, Sherry, described the appellant to him as "having dark rim glasses on with black hair with some gray, sprinkled gray in his hair . . ."

Approximately two months after the burglary, Sikes returned to Ms. Brown's house and exhibited to her and her granddaughter a photographic lineup containing photos of six black males. He testified that the two women viewed the display separately and that Ms. Brown made a positive identification of the appellant at this time.

Mikell testified that he had been drinking heavily on the day in question but that he was able to remember riding with the appellant to McDonald's house and waiting in the car while the appellant went inside. He stated that when the appellant returned to the car, he was counting money. The appellant, testifying in his own behalf, admitted that he had driven with Mikell to McDonald's house but denied that he had gone inside or that he had seen Ms. Brown or her granddaughter. *Held:*

1. The evidence was more than adequate to enable a rational trier of fact to conclude beyond a reasonable doubt that the appellant was guilty of burglary, and consequently the trial court did not err in denying his motion for directed verdict of acquittal. See generally *Crawford v. State,* 245 Ga. 89 (1) (263 SE2d 131) (1980).

2. The trial court was authorized to conclude that the photographic lineup from which Ms. Brown identified appellant was conducted properly and was not unduly suggestive, based on agent Sikes' testimony that the two women viewed the photographs separately, so that neither could see the other make her selection. While it is true that Ms. Brown said she was "there" when her granddaughter looked at the photos, this statement may be interpreted from the context in which it was made as meaning merely that she and her granddaughter were at home together at the time. Similarly, her testimony that she saw the picture her granddaughter picked out may be interpreted as meaning merely that she learned at some point which photo her granddaughter had chosen. These two ambiguous statements by Ms. Brown, which were not clarified by appellant's counsel during cross-

examination, did not require the trial court to disregard agent Sikes' testimony regarding the manner in which the photo lineup was conducted.

3. Although the appellant was clearly the oldest person in the photo lineup, the trial court was not required to conclude from this fact that the display was unduly suggestive. All of the photos were of black adult males, and, the appellant's assertions to the contrary notwithstanding, there is no indication in the record that the appellant was described to police as being in any particular age category, nor does the appellant appear to be the only subject with a noticeable amount of gray hair. Furthermore, Ms. Brown testified that she was able to observe the appellant at close range for several minutes on the day in question while standing next to the car talking to him; she exhibited a high degree of certainty in selecting his photograph and identifying him at trial; and there were no apparent discrepancies between the description she stated she provided to police and his actual appearance. Thus, we must conclude that her identification at trial was based on her observations on the day of the burglary and that there is consequently no substantial likelihood that the photographic display gave rise to a misidentification. See generally, Neil v. Biggers, 409 U. S. 188, 199 (93 SC 375, 34 LE2d 401) (1972); Sherwin v. State, 234 Ga. 592, 593 (216 SE2d 810) (1975).

4. If the trial court erred in allowing one of the state's witnesses to relate the substance of certain statements made to him by Ms. Brown, the error was harmless since the statements were merely corroborative of Ms. Brown's own testimony. Any error in allowing agent Sikes to relate, over objection, the substance of the description provided to him by Ms. Brown's granddaughter must also be considered harmless, in view of the nature and extent of the other evidence identifying the appellant as the perpetrator of the burglary. In other words, it is "highly probable" that the admission of the testimony complained of did not contribute to the verdict. See *Johnson v. State,* 238 Ga. 59 (230 SE2d 869) (1976).

5. Although the appellant has cited no error requiring a new trial, we agree with his contention that the sentencing was conducted in an improper manner. Although two separate sentencing hearings were held, no evidence in aggravation or mitigation was introduced at either one. At the initial hearing, after stating that a pre-sentence investigative report had been considered for the purpose of determining whether to probate all or part of the sentence, the trial court imposed a sentence of 10 years to serve. The pre-sentence report apparently revealed the existence of prior offenses for which the appellant had been convicted or arrested, and consequently

counsel for the appellant objected to its consideration in aggravation of punishment. The court then withdrew the 10-year sentence, suspended the hearing, and instructed the state to "get copies of all the convictions that this man had, place them in the record in aggravation, and determine that they are properly served on the other side." Although no such evidence was offered at the subsequent hearing, the court on this occasion imposed a sentence of 15 years, to serve 10.

While the trial judge is authorized to consider presentence investigative reports for the limited purpose of determining whether to probate all or part of a defendant's sentence, he is not authorized to consider such reports in aggravation of punishment. *Munsford v. State,* 235 Ga. 38, 45-46 (218 SE2d 792) (1975). See generally OCGA §§ 42-8-29, 42-8-34 (Code Ann. §§ 27-2710, 27-2709). Under the provisions of OCGA § 17-10-2 (a) (Code Ann. § 27-2503), the trial court may consider in aggravation of punishment only those prior convictions which have been offered into evidence at the pre-sentence hearing and which have been made known to the defendant prior to his trial. However, where the transcript does not affirmatively show that the trial court used the pre-sentence reports for the unlawful purpose of increasing the sentence, rather than for the lawful purpose of determining whether to grant probation, no cause for reversal is shown. *Munsford v. State,* supra.

In the case before us, the trial court initially indicated that it had used the presentence report solely to determine whether to grant probation; however, by subsequently vacating the original sentence in response to appellant's objection and ordering the state to introduce the appellant's prior convictions, the judge created the strong impression that he had in fact considered the prior offenses set forth in the presentence report as aggravating circumstances. Furthermore, the subsequent increase in the sentence was unsupported by any additional evidence whatsoever. The appellant's sentence is accordingly vacated, and the case is remanded with direction that a new sentence hearing be conducted and a new sentence imposed in accordance with the procedure set forth in OCGA § 17-10-2 (Code Ann. § 27-2503), supra, and the Supreme Court's ruling in *Munsford v. State,* supra.

*Judgment vacated and case remanded with direction. Deen, P. J., and Carley, J., concur.*

DECIDED JANUARY 24, 1983.

*Jack E. Carney, Jr.,* for appellant.
*Dupont K. Cheney, District Attorney, Douglas A. Datt,*

184

*Assistant District Attorney,* for appellee.